**23-02861MB**

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT APPLICATION

Your affiant, Homeland Security Investigations (HSI) Special Agent (SA) Jason Kirk, being duly sworn, does depose and state the following:

## PURPOSE OF AFFIDAVIT AND IDENTIFICATION OF DEVICES

1. This affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination and extraction of electronically stored information from electronic devices associated to Juan Manuel SOTO-Guzman which are currently in law enforcement possession. The electronic device (Target Device 3 or TD 3) to be searched is:

   a. One black Samsung Galaxy Tab A7 Lite (Tablet),
      IMEI: 354386274811699, Telephone number: (602) 504-7566,
      SERIAL: R9PT101D2HB,

   The electronic device (Target Device 4 or TD 4) to be searched is:

   b. One black Samsung Galaxy Tab A7 Lite (Tablet),
      IMEI: 354386272520524, Telephone number: (602) 699-2827,
      SERIAL: R9PR90F0PFR,

   The electronic device (Target Device 5 or TD 5) to be searched is:

   c. One black Samsung Galaxy Tab A7 Lite (Tablet),
      IMEI: 354386277438912, Telephone number: (602) 875-2247,
      SERIAL: R9PT60393LP,

   These devices are described in Attachment A and hereafter referred to as the "TD 3", "TD 4" and "TD 5". TD 3, TD 4, and TD 5 are currently located at 2334 E Highway 80 Douglas, AZ 85607.[1]

---

[1] For internal case consistency purposes, cellular phones and other electronic devices collected are referred to as "target devices" and numbered.

2.  There is probable cause to believe that a search of TD 3, TD 4, and TD 5 will lead to evidence of human smuggling violations under 8 U.S.C. § 1324 as well as to the identification of individuals who are engaged in the commission of those and related crimes.

3.  The facts that establish the probable cause necessary for issuance of a Court Order are personally known to me, are contained in official government or business records I have reviewed; or have been told to me directly by other members of the investigative team, which includes federal, state, or local law enforcement officers with whom I have worked on this investigation.  As this affidavit is submitted for a limited purpose, it does not contain all aspects of this investigation, but only sufficient information to establish probable cause in support of the issuance of an Order for the examination of TD 3, TD 4, and TD 5.

**SUSPECTED VIOLATIONS**

- Title 8 U.S.C. § 1324(a)(1)(A)(i) (Bringing in alien(s) at an Improper Time or Place)
- Title 8 U.S.C. § 1324(a)(1)(A)(ii) (Transporting an Illegal Alien in Furtherance of the aliens illegal presence in the United States)
- Title 8 U.S.C. § 1324(a)(1)(A)(iii) (Concealing, Harboring, or Shielding Illegal Aliens)
- Title 8 U.S.C. § 1324(a)(1)(A)(v)(I) (Conspiracy to Commit Alien Smuggling)

**TRAINING AND EXPERIENCE**

4.  Your Affiant is a Special Agent with Homeland Security Investigations and has been since March 18, 2018. I have been assigned to a human smuggling group since 2018 and have investigated the entire human smuggling cycle from start to finish both in the

United States and Mexico.  I graduated from Criminal Investigator Training Program and Homeland Security Special Agent training at the Federal Law Enforcement Training Center, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States.

5.   Prior to joining HSI, I was a Border Patrol Agent for 10 years and a Case Agent for the Tucson Sector Prosecutions Unit from 2012-2014. I have conducted investigations involving illicit activity and have gathered evidence and facts pertaining to administrative and criminal cases. I have taken sworn statements from material witnesses and suspects. I routinely perform records checks through various law enforcement databases to establish accuracy of information as well as to gather facts relevant to a respective case. I have acted as a liaison between the United States Attorney's Office and field agents, and I have assisted fellow agents in the development of cases.

6.   The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records.

7.   The applied-for warrant would authorize the forensic examination of the TD 3, TD 4, and TD 5 for the purpose of identifying electronically stored data particularly described in Attachment B.

## STATEMENT OF PROBABLE CAUSE

8.  On Thursday, June 30, 2022, Special Agents (SAs) with Homeland Security Investigations (HSI) executed two simultaneous search warrants, 22-07401MB(JR) and 22-07402MB(JR), in Phoenix, Arizona.  SAs encountered undocumented non-citizens (herein after "UNCs") at both locations and also arrested Salvador LOPEZ-Vargas during the warrants.

9.  After arresting LOPEZ-Vargas SAs applied for warrants on cellular devices being used by LOPEZ-Vargas while actively engaged in human smuggling.  SAs executed search warrant 22-08562MB and found digital ledgers being sent from cell phone (602) 904-4158 to the phones searched in 22-08562MB.  The digital ledgers resembled creations equal to those from a Microsoft Excel Sheets.  The digital ledgers identified UNCs who were smuggled, their Mexico based coordinator's name, their final destination within the United States, final payment information, and the nicknames of drivers transporting the UNCs to their final destination within the United States.

10. When SAs found these digital ledgers in LOPEZ-Vargas's phones they applied for a historical Geolocate on telephone number (602) 904-4158.  SAs executed warrant 22-01892MB, identified a location for surveillance, and located a vehicle registered to Juan Manuel SOTO-Guzman (herein after "JMSG") with the address of 13042 W Windrose Drive, El Mirage, Arizona.  SAs conducted surveillance of the address and observed an individual believed to be JMSG.  Analysis of LOPEZ-Vargas's phones and the (602) 904-4158 showed ledgers had been sent from 13042 W Windrose Drive, El Mirage, AZ to LOPEZ-Vargas's phones on several occasions.   SAs ultimately applied for search warrant 23-07073MB(JR) which was granted.

11. SAs executed 23-07073MB(JR) on February 23, 2023 and found JMSG and Adulfo SOTO-Guzman (ASG) living at 13042 W. Windrose Drive, El Mirage, Arizona.

Adulfo SOTO-Guzman was identified as JMSG's brother.  SAs seized approximately 43 paper notebook ledgers indicative of human smuggling.  The notebook ledgers were handwritten and showed the same structure, style and data as the digital ledgers being sent from (602) 904-4158 to LOPEZ-Vargas.  Additionally, SAs found over 40 cell phones throughout the residence.  TD 3 was found in a dresser drawer in the master bedroom "Room F".  TD 4 was found in "Room E" on the kitchen table next to paper, notebook ledgers. TD 5 was found in "Room F" hidden in the dirty clothes hamper along with a red cell phone that had been destroyed.  SAs also seized luxury jewelry, such as a diamond encrusted Rolex watch with a receipt showing its value at $30,000 dollars and approximately $22,000 in cash from JMSG's bedroom.  JSMG's bedroom was identified as "Room F" when SAs found JMSG's Mexico Passport in the master bedroom.

12.  ASG made post-*Miranda* statements to SAs.  ASG stated his brother made the electronic spreadsheets ASG stated that he was not sure if his brother made the spreadsheets but knows he would send them to UNC drivers. ASG also explained the interior drivers would receive  final payment for the UNC when the UNC arrived to the final destination n the United States.  ASG said the driver would transport the money back to him and JMSG.  ASG told SAs the interior driver would receive $250 per UNC smuggled and that $150 would go to himself or JMSG.  Any remainder amount would be kept for future operational costs of the organization.

13.  Due to the nature and secrecy of this transnational criminal organization (TCO), your Affiant believes that through a search of TD 3, TD 4 and TD 5, SAs will be able to identify and link co-conspirators that worked with JMSG and ASG.  Your Affiant also believes there will be evidence of digital ledgers created or saved within TD 3, TD 4 and/or TD 5.  Handheld tablets and associated applications are becoming increasingly sophisticated and technologically advanced making older larger computers obsolete.

No laptop or traditional desk top computer was found during the execution and search of 23-07073MB(JR).  TD 3, TD 4, and TD 5 were seized by HSI and are currently in storage at 2334 E. Highway 80, Douglas, Arizona 85607.  In your Affiant's training and experience, your Affiant knows that TD 3, TD 4 and TD 5 have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when TD 3, TD 4 and TD 5 first came into the possession of Homeland Security Investigations.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14.  Based on my knowledge, training, and experience, I know that electronic devices such as TD 3, TD 4 and TD 5 can store information for long periods of time.  Similarly, things that have been viewed on the electronic device via the Internet and applications are also typically stored for long periods of time. This information can sometimes be recovered with forensic tools.

15.  *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in this affidavit, but also forensic evidence that establishes how TD 3, TD 4 and TD 5 were used, the purpose of its use, who used it, and when.  There is probable cause to believe that the following forensic electronic evidence might be found on TD 3, TD 4 and TD 5:

   a)  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b)  Forensic evidence on an electronic device can also indicate who has used or controlled the device.  This "user attribution" evidence is

analogous to the search for "indicia of occupancy" while executing a
search warrant at a residence.

c)    A person with appropriate familiarity with how an electronic device
works may, after examining this forensic evidence in its proper
context, be able to draw conclusions about how electronic devices
were used, the purpose of their use, who used them, and when.

d)    The process of identifying the exact electronically stored information
on a storage medium that is necessary to draw an accurate conclusion
is a dynamic process.  Electronic evidence is not always data that can
be merely reviewed by a review team and passed along to
investigators.  Whether data stored on a computer is evidence may
depend on other information stored on the computer and the
application of knowledge about how a computer behaves.  Therefore,
contextual information necessary to understand other evidence also
falls within the scope of the warrant.

e)    Further, in finding evidence of how a device was used, the purpose of
its use, who used it, and when, sometimes it is necessary to establish
that a particular thing is not present on a storage medium.

16.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B),
the warrant I am applying for would permit the examination of TD 3, TD 4 and TD 5
consistent with the warrant. The examination may require authorities to employ
techniques, including, but not limited to, computer-assisted scans of the entire
medium, that might expose many parts of the electronic device to human inspection to
determine whether it is evidence described by the warrant.

17.  *Manner of execution.*  Because this warrant seeks only permission to examine TD 3,
TD 4 and TD 5 which are already in law enforcement's possession, the execution of

this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SUMMARY

18. Based on the foregoing factors, I believe that TD 3, TD 4 and TD 5 were used to facilitate and further the smuggling of illegal aliens through the U.S. in violation of Title 8 U.S.C. § 1324(a)(1)(A)(ii) and other federal statutes. Obtaining the electronically stored information from TD 3, TD 4 and TD 5 is anticipated to yield additional evidence of a human smuggling conspiracy between JMSG, ASG, LOPEZ-Vargas and other co-conspirators unknown to investigators.

19. Considering the ongoing investigation referred to in this affidavit, and the need to avoid any one of the adverse results enumerated in 18 U.S.C. § 2705(a)(2), it is further requested that this affidavit be filed *under seal* and that notice of the order be delayed for a period of 180 days.


I swear, under penalty of perjury, that the foregoing is true and correct.

JASON W KIRK   Digitally signed by JASON W KIRK
Date: 2023.03.07 10:15:21 -07'00'

_____

Jason Kirk
Special Agent
Homeland Security Investigations


Subscribed and sworn to telephonically this __7th__ day of March, 2023.

Honorable Leslie A. Bowman
United States Magistrate Judge

8

## ATTACHMENT A

*Property to be searched*

The property to be searched is:

> One black Samsung Galaxy Tab A7 Lite (Tablet),
>
> IMEI: 354386274811699, Telephone number: (602) 504-7566,
>
> SERIAL: R9PT101D2HB, (TD 3)

TD 3 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 3 for the purpose of identifying the electronically stored information described in Attachment B.

The property to be searched is:

    a.  One black Samsung Galaxy Tab A7 Lite (Tablet),

       IMEI: 354386272520524, Telephone number: (602) 699-2827,

       SERIAL: R9PR90F0PFR, (TD 4)

TD 4 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 4 for the purpose of identifying the electronically stored information described in Attachment B.

The property to be searched is:

      b.  One black Samsung Galaxy Tab A7 Lite (Tablet),

          IMEI: 354386277438912, Telephone number: (602) 875-2247,

          SERIAL: R9PT60393LP, (TD 5)

TD 5 is currently located in law enforcement possession at 2334 E Highway 80 Douglas, AZ 85607.



This warrant authorizes the forensic examination of TD 5 for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

## DESCRIPTION OF ITEMS TO BE SEARCHED FOR

1.      Any records and information found within the digital contents of the black Samsung Galaxy Tab A7 Lite, IMEI: 354386274811699, Telephone number: (602) 504-7566, containing SERIAL: R9PT101D2HB (hereafter Target Device 1 or TD 3),  One black Samsung Galaxy Tab A7 Lite,  IMEI: 354386272520524 Telephone number: (602) 699-2827, SERIAL: R9PR90F0PFR, (hereafter Target Device 2 or TD 4), and One black Samsung Galaxy Tab A7 Lite, IMEI: 354386277438912, Telephone number: (602) 875-2247, SERIAL: R9PT60393LP, (hereafter Target Device 3 or TD 5) including:

      a.  all information related to the receipt, importation, transportation, transfer, possession of illegal aliens;

      b.  all information related to sponsors or sources of alien smuggling (including names, addresses, telephone numbers, locations, or any other identifying information);

      c.  all bank records, checks, credit card bills, account information, or other financial records;

      d.  all information regarding the receipt, transfer, possession, transportation, or use of alien smuggling proceeds;

      e.  any information recording schedule or travel;

      f.  evidence of who used, owned, or controlled the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

      g.  evidence indicating how and when TD 3, TD 4, and TD 5 were accessed or used to determine the chronological context of the cellular telephone access,

use, and events relating to crime under investigation and to the cellular telephone user;

h. evidence indicating the user of TD 3, TD 4, and TD 5's state of mind as it relates to the crime under investigation;

i. evidence of the attachment to TD 3, TD 4, and TD 5 of another storage device or similar container for electronic evidence;

j. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from TD 3, TD 4, and TD 5;

k. evidence of the times TD 3, TD 4, and TD 5 were used;

l. passwords, encryption keys, and other access devices that may be necessary to access TD 3, TD 4, and TD 5;

m. documentation and manuals that may be necessary to access TD 3, TD 4, and TD 5 or to conduct a forensic examination of TD 3, TD 4, and TD 5;

n. records of or information about Internet Protocol addresses used by TD 3, TD 4, and TD 5;

o. records of or information about TD 3, TD 4, and TD 5's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

p. contextual information necessary to understand the evidence described in this attachment.

q. Google account information, including Gmail, and Google Cloud information found on these devices or accessed from these devices.

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information;

mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.